JAMES A. GEARTY, Appellant, v. THE MAYOR, ALDERMEN AND
    COMMONALTY OF THE CITY OF NEW YORK, Respondent.

171      61
f  77 AD¹230
j  77 AD¹235
j  77 AD⁵237
j  77 AD⁵239

1. CAUSE OF ACTION — ELECTION OF REMEDIES — MUNICIPAL CON-
TRACT. A contractor ordered by the city's engineer of construction to
take up and relay a part of the pavement alleged to have been improperly
constructed may assert that he has conformed to the requirements of his
contract with the city, stop work, and sue to recover for labor performed
and materials furnished under the contract, together with prospective
profits, or he may relay the pavement as required, and sue to recover
damages on the ground that he has been unlawfully compelled to do the
work a second time.

2. PERFORMANCE. Under a contract for street paving requiring the
work to be done to the satisfaction of the board of park commissioners
and the engineer of construction, such officers are not vested with an
arbitrary discretion, but must exercise the power conferred reasonably and
in accordance with fairness and good faith.

3. WAIVER. A contractor required by the city's engineer of construc-
tion to relay pavement alleged to have been improperly constructed does
not, by compliance with the order, without making any demand for dam-
ages, waive his claim therefor, where he made oral protest against tearing
up the work, and on settlement with the city reserved his right to assert
any legal claim under the contract in a written release executed at the time.

4. SUFFICIENCY OF DEMAND UPON SECRETARY OF BOARD OF PARK
COMMISSIONERS. A demand by a contractor upon a board of park com-
missioners for a statement of the number of days during which work
under his contract with the city was delayed by the weather or by any act
or omission on the part of the city, which facts the board was required
by the contract to determine, may be made of its secretary, and need
not be made of the board in session.

5. WHEN CERTIFICATE AS TO EXTRA WORK UNNECESSARY. A con-
tractor who sues to recover damages on the ground that he was compelled
to perform a second time work called for by his contract with the city,
need not obtain a certificate of the board of park commissioners and of
the engineer of construction required in case a claim for extra work is
made under the contract, since the action is founded on a breach of the
contract and the provision requiring a certificate has no application.

Gearty v. Mayor, etc., of New York, 62 App. Div. 73, reversed.

(Argued March 31, 1902; decided May 13, 1902.)

APPEAL from a judgment, entered June 22, 1901, upon an
order of the Appellate Division of the Supreme Court in the

first judicial department, overruling plaintiff's exceptions ordered to be heard in the first instance by the Appellate Division and directing judgment dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg* and *Alfred C. Petté* for appellant. The judgment dismissing the complaint is a judgment upon a nonsuit, and may be reviewed by this court. (*Ware* v. *Dos Passos*, 162 N. Y. 281; *Higgins* v. *Eagleton*, 155 N. Y. 466; *Place* v. *N. Y. C. & H. R. R. R. Co.*, 167 N. Y. 345.) The uncontradicted evidence in this case conclusively shows that the work as originally done was, in all respects, properly performed and in exact accord with the plans and specifications. (*Philip* v. *Gallant*, 62 N. Y. 256; *Nolan* v. *Whitney*, 88 N. Y. 648; *Oberlies* v. *Bullinger*, 132 N. Y. 598; *C. V. G. Co.* v. *N. Y. & B. Bridge*, 32 App. Div. 83.) The plaintiff having contracted to do the work according to the plans and specifications, and having done his work in accordance therewith, the action of the defendant in compelling him to tear up and do over a portion of the work was wrongful, and amounted to a breach of the contract, for which the plaintiff is entitled to recover. (*McK. F. S. Co.* v. *Mayor, etc.*, 160 N. Y., 72; *Smith* v. *Wetmore*, 167 N. Y. 234; *Roehm* v. *Horst*, 178 U. S. 1; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *McMaster* v. *State*, 108 N. Y. 542; *Weeks* v. *Rector, etc.*, 56 App. Div. 195.) The clause in the contract, providing that the work should be done to the satisfaction of the commissioners of the department of public parks and the engineer, did not invest them with arbitrary power capriciously, and without reasonable grounds, to determine that work properly done was defective or not to their satisfaction. (*Duplex Safety Boiler Co.* v. *Garden*, 101 N. Y. 387; *Russell* v. *Allerton*, 108 N. Y. 288; *Doll* v. *Noble*, 116 N. Y. 230; *City of Brooklyn* v. *B. C. R. R. Co.*, 47 N. Y. 475; *C. V. G. Co.* v. *N. Y. & B. Bridge*, 32 App. Div. 83.) The

plaintiff is in no way precluded from recovery by reason of the acceptance of the moneys shown due by the final certificate. (*E. V. B. Co.* v. *Prosser*, 157 N. Y. 289; *Van Aiken* v. *Mayor, etc.*, 18 App. Div. 89; *Underwood* v. *F. J. S. Ins. Co.*, 57 N. Y. 505; *Boerum* v. *Schenck*, 41 N. Y. 182; *Shapley* v. *Abbott*, 42 N. Y. 443; *N. Y. R. Co.* v. *Rothery*, 107 N. Y. 310; *Ripley* v. *Ætna Ins. Co.*, 30 N. Y. 136; *Stenton* v. *Jerome*, 50 N. Y. 480.) The plaintiff cannot be held to be precluded by the engineer's certificate. (*Mulholland* v. *Mayor, etc.*, 113 N. Y. 631.) The right to recover was not in any way barred by the release signed by the plaintiff. (*O'Brien* v. *Mayor, etc.*, 139 N. Y. 543.) The plaintiff was entitled to recover the amount deducted for overtime penalty. (*Murphy* v. *City of Buffalo*, 38 Hun, 49; *Grube* v. *Schultheiss*, 57 N. Y. 669; *Weeks* v. *Little*, 89 N. Y. 566; *Lawson* v. *Hogan*, 93 N. Y. 39; *Willis* v. *Webster*, 1 App. Div. 301; *Simmons* v. *O. C. Co.*, 31 App. Div. 30; *Dady* v. *Mayor, etc.*, 57 Hun, 456.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly* and *Terence Farley* of counsel) for respondent. Where the allegations of a complaint are unproved, not in some particular or particulars only, but in its entire scope and meaning, it is not a case of variance but of failure of proof, and no judgment can be rendered in favor of plaintiff without an amendment of the pleading. (*Reed* v. *McConnell*, 133 N. Y. 425; *Phelan* v. *Mayor, etc.*, 119 N. Y. 86.) There is no evidence whatsoever that any proper demand was made upon the board of parks for the overtime certificate. (*Murphy* v. *City of Buffalo*, 38 Hun, 49.) By the express terms of the contract the commissioners are made the judges of the time during which the work required by the contract has been delayed in consequence of the condition of the weather, or by any act or omission on the part of the city, and their determination is final and conclusive unless attacked for fraud. (*Smith* v. *Brady*, 17 N. Y. 173; *Nolan* v. *Whitney*, 88 N. Y. 648; *Phelan* v. *Mayor, etc.*, 119 N. Y. 86.) The second

cause of action was properly dismissed. (*Byron* v. *Low*, 109 N. Y. 291; *Sweet* v. *Morrison*, 116 N. Y. 19; *O'Brien* v. *Mayor*, 139 N. Y. 543; *Beardsley* v. *Cook*, 143 N. Y. 143; *Sweeney* v. *United States*, 109 U. S. 618; *H. S. R. R. Co.* v. *Maher*, 48 Ark. 522; *Cox* v. *McLaughlin*, 63 Cal. 196; *D., etc., R. R. Co.* v. *Stout*, 8 Col. 61; *Packard* v. *Van Schoick*, 58 Ill. 79; *Lake View* v. *MacRitchie*, 134 Ill. 203.) By the express provisions of the contract the contractor was directed, when notified to do so by the engineer, to take up defective and improper work and relay it or otherwise remedy it to the satisfaction of the engineer. (*Montgomery* v. *Mayor, etc.*, 9 Misc. Rep. 331; *W. U. R. R. Co.* v. *Smith*, 75 Ill. 496; *Bowe* v. *United States*, 42 Fed. Rep. 761; *Gibbons* v. *United States*, 15 Ct. of Cl. Rep. 174; *Loverock* v. *King*, 1 M. & R. 60.; *Trustees, etc.*, v. *Platt*, 5 Ill. App. 567; *Waldron* v. *A. W. Co.*, 165 Mass. 305; *L. & N. R. Co.* v. *Hollerbach*, 105 Ind. 137; *Martine* v. *Nelson*, 51 Ill. 422.) Plaintiff by obeying the orders of the engineer requiring him to tear up and relay the improper work, without making any claim for extra compensation at the time the changes were ordered or made, or without making a new contract, has waived any claim to extra compensation. (*McNamara* v. *Board of Comrs.*, 44 La. Ann. 628; *McGrann* v. *N. L. R. Co.*, 29 Penn. St. 82; *Chicago* v. *Sheldon*, 9 Wall. 50; *Bowe* v. *United States*, 42 Fed. Rep. 761; *Garrison* v. *Nute*, 87 Ill. 215; *V. S. M. E. Church* v. *Brose*, 104 Ill. 206; *Patterson* v. *Camden*, 25 Mo. 13; *St. L. G. L. Co.* v. *St. Louis*, 46 Mo. 121; *McMullen* v. *Hopper*, 15 App. Div. 364; *Nickerson* v. *A., T. & S. F. R. Co.*, 17 Fed. Rep. 408.) Plaintiff has no legal cause of action, whether his claim be alleged to be within or without the terms of the contract. (*Phelan* v. *Mayor, etc.*, 119 N. Y. 86; *Newell* v. *Mayor, etc.*, 61 Hun, 356.)

BARTLETT, J. The plaintiff, on the eighteenth day of May, 1895, entered into a contract with the mayor, aldermen and commonalty of the city of New York, to regulate, set curb-

stones and pave with granite block pavement with concrete foundation the roadway or Transverse road No. 4, crossing Central Park at Ninety-seventh street from Fifth avenue to Central Park West (Eighth avenue). This is one of the underpass roads crossing Central Park from east to west.

The complaint contains two causes of action: (1) To recover the sum of $440.00 alleged to have been unlawfully deducted for overtime. (2) To recover the sum of $10,000 as damages suffered by reason of certain work being unlawfully, and in breach of the contract, required to be done a second time.

It may be stated, generally, that the answer of the city insists that the deduction for overtime was properly made and that the work required to be done a second time was exacted, under the express terms of the contract entered into by the plaintiff with the city.

In setting forth his first cause of action, the plaintiff alleged, in substance, that he demanded of the department of public parks of the city of New York, a certificate in writing, containing the number of days delay caused by any act or omission on the part of the plaintiff, as required under the contract, but that the same was unreasonably and in bad faith refused. This allegation is denied by the city.

It is conceded that on the twenty-fifth day of June, 1896, the defendant paid to the plaintiff the sum of $12,396.23 as the total amount admitted by the city as due him under the contract as completed, excepting the amount retained as security for repairs. This left in the hands of the city the sum of $440.00, sued for in the first cause of action, for excess of inspection, twenty-two days at twenty dollars a day, and amount retained as security for repairs. It also left, unadjusted, as plaintiff claims, the value of the work referred to in the second cause of action.

On receiving this amount the plaintiff gave to the city a receipt reading as follows: " Received at the office of the Comptroller of the City of New York, this 25th day of June, 1896, from Ashbel P. Fitch, Comptroller, a warrant on the Chamberlain for $12,396.23 in payment of the above account,

which is in full for all claims and demands on this contract, excepting the amount retained as security for repairs." ·

The plaintiff at the same time executed under seal a general release, which is exacted by the city from all contractors when receiving the last payment on a completed contract in accordance with the final certificate of the engineer of the department of public works.

This instrument releases the city from all claims that the plaintiff has against it by reason of the contract in question on account of "any matter, cause or thing whatsoever reserved or arising therefrom, from the beginning of the world to the day of the date of these presents, excepting $1,723.33 retained as repairing security; also excepting any legal claim which I may have under and in pursuance of the terms and conditions of the contract herein."

It is the contention of the plaintiff that he was obliged to execute the receipt and release, under the rules of the comptroller's office, in order to collect what was admitted to be due him under the contract; and that the release does not bar this action, as it expressly excepts any legal claim which he has under and in pursuance of the terms and conditions of the contract.

The city gave no evidence at the trial, the motion to dismiss the complaint being granted at the close of the plaintiff's case.

The plaintiff began work under this contract on notice from the city May 23rd, 1895, and continued without interruption until July, 1895, when a seventy per cent certificate for work done was given him by the engineer of construction, which showed that a certain amount of work had been performed.

The certificate further stated: "I certify that I have duly examined the above account and compared it with the contract and that it is correct; that the work and materials mentioned above have been performed and delivered as required by the contract and in a satisfactory manner, and that the sum of $7,751.00 is justly due."

There was also given to the plaintiff at this time the certificate of the commissioners of the department of public parks, which reads as follows: "We hereby certify that we have examined the above account and believe it to be correct; the prices charged are in accordance with the terms of the contract for regulating, setting curbstones and paving with granite block pavement, with concrete foundation (describing roadway in detail); and that such services as herein specified have been properly performed and according to the certificates of the officers of this department duly appointed to supervise the same."

Thereafter, and on the twenty-fourth day of July, 1895, the plaintiff received the following notice from the engineer of construction: "On Monday last I made an examination of the work done by you under your contract for regulating and paving the roadway (describing it) and found it improperly done and not in accordance with the specifications, and I instructed the agent in charge to stop all work being done under the contract, excepting the grading and curbsetting, until the work improperly done was remedied. You are hereby directed to immediately take up and remove the concrete and pavement improperly done — beginning at the westerly end and working toward Fifth avenue until all the work which has not been done in accordance with the specifications has been removed."

The plaintiff made vigorous objection to tearing up the completed work, and insisted that it was properly done under the contract, as the previous certificates received from the engineer and commissioners of the department of public parks showed.

Nevertheless, in view of the city's notice to stop work under the contract, except grading and curbsetting, until the work alleged to have been improperly done was remedied, the plaintiff proceeded to remove the completed work and laid it over again as required.

While the complaint contains two causes of action, it is obvious that the main and controlling question in this case is

whether, under the terms of the contract between the plaintiff and the city, the course pursued by the engineer of construction is justifiable.

There is also the additional question whether any of the conceded acts of the plaintiff amount to an estoppel or waiver as to the causes of action now sought to be enforced.

The agreements which contractors are required to execute before entering upon city work are exceedingly stringent in their provisions against contractors and in favor of the municipality, and the former must determine in the first instance whether it is advisable to assume obligations that may prove very onerous.

It remains only for the courts to decide what is a reasonable and fair construction of the contract as written, and determine the rights of the parties accordingly.

The present contract covers forty-two pages of the printed record and contains a large number of provisions that are not necessary to be considered at the present time.

The provisions material to this controversy will be now quoted or stated in substance.

Subdivision (A), paragraph (d) provides, " All the materials furnished and all the work done which, in the opinion of said Commissioners of the Department of Public Parks, shall not be in accordance with these specifications, shall be immediately removed and other materials furnished and work done that shall be in accordance therewith."

Subdivision (B) provides, in substance, that the engineer appointed by the commissioners shall certify as to the work and materials done and furnished, and that the filing of the certificate with that department shall be a condition precedent to the right of the second party to payment.

(D) provides that the contract shall be performed within fifty consecutive days, deducting such days as work shall be prevented by weather or the act of the city, all of which is to be determined by the commissioners.

(G) provides in part that if the work is not being done or progressing according to the terms of the contract, or if the

work has not been fully completed in the time named for its completion, the commissioners shall have the power to notify the contractor to discontinue the work under the contract, or any part of such work, by written notice to be served in the manner stated.

(H) provides that work not done to the satisfaction of the commissioners and the engineer shall immediately be made good by the contractor.

(M) provides as follows: " After the completion of the work, should the Engineer require it for his more perfect satisfaction, the contractor shall make such openings and to such extent, through such part or parts of the said work as the Engineer shall direct, and he shall restore the work so disturbed to the satisfaction of the Engineer.  Should any work be found defective or improperly done, such defective or improper work shall be taken up and relaid, or otherwise remedied, to the satisfaction of the Engineer, and should the contractor refuse or neglect to correct such defective work when notified to do so, or by a written notice to be served on the contractor, either personally or by leaving it at his residence, or with his agent in charge of the work, then the Commissioners of Public Parks shall employ the necessary men and material to do the work, and the expense thereof shall be deducted from any moneys that may be due the contractor on account of this contract."

(N) provides in substance for monthly estimates to be made by the engineer of the amount of materials furnished and delivered and work done by the contractor, and then states : " Such estimates of amount and quality shall not be required to be made by strict measurement, but they may be made by measurement or by estimation, or partly by one and partly by the other, and it shall be sufficient if they are approximate only and estimates strictly so-called.  And upon each such estimate being made and certified in writing to the Commissioners of the Department of Public Parks, the parties of the first part will pay, if in the discretion of the Commissioners of the Department of Public Parks it shall have been determined

so to do, to the said party of the second part, seventy per centum of the amount stated in such estimate or certificate to be the value of the materials therein certified to have been furnished and delivered, and work therein certified to have been done; provided, the value of the work certified in such estimate shall amount to five thousand dollars; * * * and provided, that nothing herein contained be construed to affect the right hereby reserved of the said Commissioners to reject any return or certificate of the Engineer or of any inspectors having charge of the work, should such return or certificate be, in the opinion of the Commissioners of the Department of Public Parks, not in accordance with the facts of the case or the requirements of the agreement, or be otherwise improperly given, and to reject the whole or any portion of the aforesaid work, should the same, or any part thereof, not be in accordance with the requirements of this contract."

(T) provides as follows : " It is further expressly understood and agreed by and between the parties hereto that the action of the Engineer, by which the said contractor is to be bound and concluded according to the terms of this contract, shall be that evidenced by his final certificate ; all prior certificates or estimates upon which seventy per cent payments may be made being merely estimates, and subject to the corrections of such final certificate ; which final certificate may be made without notice to the contractor thereof, or of the measurements upon which the same is based."

We come then to the question, assuming the city to have been strictly within its legal rights under the provisions of this contract in requiring the completed pavement to be taken up and relaid, as to the legal remedies open to the contractor under such a state of facts.

This precise point does not appear to have been decided in this court in any case cited by counsel under this form of city contract.

The position of this plaintiff may be briefly summed up as follows : He proceeded without interruption with his work for about sixty days and laid a considerable amount of expen-

sive block pavement, furnishing the materials, and received therefor the seventy per cent certificate of the commissioners and their engineer of construction stating that there was justly due him $7,751. In a very few days thereafter he was ordered by the engineer of construction to take up this work and relay it.

We thus have a situation where each party charges the other with breach of the contract. The city insists that the work was improperly done and the contractor urges that the commissioners are arbitrarily or improperly exercising the powers vested in them by the contract. Questions of fact and law are thus presented, which can only be determined by a trial.

It is very clear that the plaintiff could have stopped work as ordered by the engineer of construction and stood upon his contention that the work had been properly done, brought his action to recover for labor and materials performed and furnished under the contract and claimed his prospective profits. (*Smith* v. *Wetmore*, 167 N. Y. 234; *Roehm* v. *Horst*, 178 U. S. 1.)

The important question is whether a second remedy is open to the contractor, such as is invoked in this case. The plaintiff did not choose to put himself in the attitude of refusing to obey the directions of the commissioners, thereby assuming the position of a defaulter under a contract with the city, but preferred to perform it as best he could, accepting under the final certificate such amount as the city admitted to be due him, subject to reservation of his rights under oral protests and the written release under seal, to which reference has already been made.

If the plaintiff was entitled to this election of remedies, then he should have been allowed to go to the jury on the question whether the pavement as originally laid was in conformity to the provisions of the contract. The fact that this work was to be performed to the satisfaction of the commissioners and their engineer of construction is not conclusive against the plaintiff. That power cannot be exercised in an

arbitrary manner, but reasonably and in accordance with fairness and good faith.

This court has frequently held that under such a provision, that which the law will say a contracting party ought in reason to be satisfied with, that it will say he is satisfied with. (*Duplex Safety Boiler Co.* v. *Garden*, 101 N. Y. 387; *Russell* v. *Allerton*, 108 N. Y. 288; *Doll* v. *Noble*, 116 N. Y. 230; *City of Brooklyn* v. *Brooklyn City Railroad Co.*, 47 N. Y. 475.)

It is insisted on behalf of the city that the plaintiff, by obeying the orders of the engineer of construction, requiring him to take up and relay the alleged improper work, without making any claim for extra compensation at the time the changes were ordered or made or without making a new contract, has waived any claim, if he was entitled to any, to extra compensation.

This proposition assumes, erroneously, that the plaintiff, is seeking to recover extra compensation under the contract. This action is to recover damages for breach of the contract. It is true that the plaintiff made no claim for extra compensation as he contemplated the best performance of the contract within his power and then an action for damages. The facts already stated do not sustain the contention that the plaintiff has waived the claim that he now makes.

As we have seen, by oral protests and by the written release, the plaintiff carefully reserved his rights and the city paid under the final certificate of the commissioners only the sum it conceded to be due, and has in no way taken action to its prejudice upon the alleged waiver of the plaintiff.

It has been said that "The doctrine of estoppel lies at the foundation of the law as to waiver." (*Underwood* v. *Farmers' Joint Stock Ins. Co.*, 57 N. Y. 505.)

In *New York Rubber Co.* v. *Rothery* (107 N. Y. 310) the doctrine of an equitable estoppel is discussed, and it is held that to constitute it "the person sought to be estopped must do some act or make some admission with an intention of influencing the conduct of another, or that he had reason to

believe would influence his conduct, and which act or admission is inconsistent with the claim that he proposes now to make. The other party must have acted upon the strength of such admission or conduct. In cases of silence there must be not only the right but the duty to speak before a failure so to do can estop the owner." (p. 316.)

In *Shapley* v. *Abbott* (42 N. Y. 443), EARL, Ch. J. (at page 447), uses this language: " Now what is an equitable *estoppel in pais* as generally understood and applied in the courts ? It is used to preclude a party from maintaining by evidence that which he has before expressly or tacitly denied, or disproving that which he has before expressly or tacitly admitted when the other party has acted upon the faith of the admission or denial in such a manner that he will be injured unless the same is held conclusive." (See authorities there cited ; also *Boerum* v. *Schenck*, 41 N. Y. 182.)

It is urged by the city, in reference to the first cause of action, to recover the amount alleged to have been unlawfully deducted for overtime, that the plaintiff made no demand upon the commissioners to certify the number of days during which work required by the contract had been delayed in consequence of the condition of the weather, or by any act or omission on the part of the city.

The plaintiff gave evidence tending to prove that the person authorized to make the demand on his behalf went to the office of the board of park commissioners and was there introduced to the secretary, upon whom demand was made.

The city makes the point that the demand should have been made on the board when in session.

We are of opinion that a demand made of the secretary is equivalent to making it upon the board when in session. Any other rule would be overstrict and inconvenient. (*Murphy* v. *City of Buffalo*, 38 Hun, 49.)

The point made by the city in reference to the second cause of action to recover damages for work required to be performed a second time, that the plaintiff has obtained no cer-

tificate of the commissioners and the engineer of construction covering the amount, is without force.

If this were an action for extra work under the contract, such a certificate would be necessary, but, as already pointed out, this is an action to recover damages for a breach of the contract, and the provision requiring a certificate has, no application.

We are of opinion that either of the remedies discussed was open to the plaintiff at his election, and that as this record presents evidence which is to be taken as true on this appeal, it was error for the trial judge to dismiss the complaint, the plaintiff being entitled to go to the jury on the issues presented.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

PARKER, Ch. J., O'BRIEN, MARTIN and VANN, JJ., concur; GRAY and HAIGHT, JJ., dissent.

Judgment reversed, etc.