JAMES ANDERSON, Claimant, *v.* THE STATE OF NEW YORK. No. 2653-A.

(State of New York, Court of Claims, May, 1918.)

Contracts — provisions of — breach of — highways — damages.

A contract for the construction of a macadam highway provided that each of the two courses should be built of crushed stone known as "run of the crusher." When the contractor began the laying of the stone he was stopped by the state engineer in charge of the work and was ordered and directed not to use "run of the crusher" stone merely, but to grade it in separate bins according to size and to place in the bottom course three-inch stone, to be filled with dustless screenings and rolled. The contractor after calling the attention of the engineer to the specifications of the contract protested against these and other directions of said engineer, which were given pursuant to instructions received by him from the then state commission of highways, and against complying with them. Upon the refusal of the engineer to permit the work to be done except pursuant to such directions the contractor completed the work at a very great increase of expense to him. Upon the hearing of a claim for damages for a breach of the contract due to the action of the state's representa-

tives in compelling claimant to grade and apply the stone in a manner not within the obligation of the contract, *held*, that a provision of said contract that "All contingencies arising during the prosecution of the work shall be provided for to the satisfaction of the commission and as may be agreed upon in the original or supplemental contract executed by the commission" could not defeat a recovery for the loss inflicted on claimant by following the directions of the engineer in relation to the crushed stone.

Where during the course of the work the claimant performed various other services and furnished other material incident to the construction of the road, not provided for or contemplated by the contract plans or specifications, and it does not appear that they were performed or furnished over claimant's opposition and after his protest, nor that they were not performed or furnished willingly or by agreement between claimant and the state, there can be no recovery therefor on the theory of a breach of the original contract, as by compliance with the orders and directions, if any were given, claimant had waived his rights in that connection.

CLAIM for damages under a contract for the improvement of the highway known as the Boonville Town Line-McKeever State Highway, Division No. 3, Highway No. 5248, in the counties of Oneida and Herkimer.

Parsons & McClung, for claimant.

H. P. Nevins, Deputy Attorney-General, for State of New York.

CUNNINGHAM, J.   On June 13, 1912, the claimant and the state of New York entered into a contract for the improvement of the highway, known as the Boonville Town Line-McKeever State Highway, Division No. 3, Highway No. 5248, in the counties of Oneida and Herkimer, according to the plans and specifications made a part of the contract.

State of New York, Court of Claims, May, 1918.    [Vol. 103.

The highway to be improved was about eighteen miles in length, and the lump sum price was $254,-193.73. There were agreed unit prices, also, for the various items of work and material involved, as is usual in such cases.

The contract was made under the provisions of chapter 30 of the Laws of 1909, and chapter 646 of the Laws of 1911, and the acts amendatory thereof and supplemental thereto. The claimant completed the contract and performed all the work to the satisfaction of the state, and was paid the sum of $248,414.60.

The contract, plans and specifications provided for the construction of a two-course macadam highway, each course to be built of crushed stone, known as " run of the crusher."

The claimant began work in July, 1912, and continued until about September 1, 1912, when he began the laying of stone pursuant to the contract. Thereupon he was halted by the state engineers in charge of the work, and was ordered and directed not to use ". run of the crusher " stone merely, but to grade it in separate bins, or pockets, according to size, and to place in the bottom course three-inch stone, to be filled with dustless screenings and rolled. The provision of the specifications for said course reads· "A layer of broken stone consisting of the run of the crusher from dust approximately three inch stone." He also was ordered to construct the top course of two-inch stone and one-inch stone, only. The specification for said course reads: " The run of the crusher from screenings to and including two inch stone." He further was ordered to place upon the top of the two courses so constructed a coat of bituminous asphalt, upon which should be placed one-inch stone, and upon top of the one-inch stone should be placed a second coat of asphalt, upon which should be spread a wearing

course of dustless screenings. All these directions of the engineer were given pursuant to instructions received by the latter from the then state commission of highways.

The claimant called the attention of the engineer to the provisions of the specifications, and protested against these directions and against complying with them. The engineer replied, in substance: "This is the way we have got to have it; this is the way it must be done," and refused to permit the work to be done, except pursuant to these directions, whereupon the claimant complied, and completed the work as directed.

This resulted in a very great increase in expense to the claimant. It compelled him to furnish 40,906 cubic yards additional of stone, of the value of one dollar and seventy cents per cubic yard, which was the unit price fixed by the contract for crushed stone.

During the course of the work, the claimant performed various other services, and furnished certain other materials, incident to the construction of the road, not provided for, or contemplated, by the contract, plans or specifications. It does not appear that they were performed or furnished under any contention by the state that the contract, plans or specifications required them, or that the claimant was compelled by any representative of the state to perform or furnish them, over his opposition or protest. Rather, the inference from the testimony is that these items in the nature of extra or additional work were performed by the contractor willingly, and by arrangement, or agreement with the state. Certainly, it appears from the evidence that these items were clearly and probably outside of any provisions of the contract, plans or specifications. They consisted of earth and rock excavation, iron and steel, sub-base construction, relaying drain pipe, and pipe railing and they aggregate in amount $8,720.72.

State of New York, Court of Claims, May, 1918.    [Vol. 103.

None of the items for which this claim is made is comprised within the terms of the original, or of a supplemental, contract executed by the commission. The state contests the claim on this ground, and in substantiation of its defense calls our attention to chapter 30, Laws of 1909, section 130, which provides, '' State and county highways shall be constructed or improved by contract. Upon the completion and final adoption or approval, as provided by law, of the plans, specifications and estimate for the construction or improvement of a state or county highway, contracts therefor shall be executed as provided herein. * * * 9. Contingencies. All contingencies arising during the prosecution of the work shall be provided for to the satisfaction of the commission and as may be agreed upon in the original or by a supplemental contract executed by the commission.''

This provision will not defeat recovery by the claimant for the loss inflicted upon him by the directions of the engineer, in relation to the crushed stone, and the claimant's compliance with them. The state misapprehends the nature of the claim in this respect, and the theory upon which it is predicated. The claimant does not sue for compensation for extra or additional work or materials. If he did, we agree that the statute would bar recovery, in the absence of a provision in the original, or in a supplemental, contract, executed by the commission, pursuant to which the same was done, or furnished. This item of the claim is for damages for *breach* of the original contract, due to the action of the state's representatives in compelling the claimant to grade and apply the stone in a manner not within the obligation of the contract. This action by the state was conceded on the trial.

In the case of *Gearty* v. *Mayor*, 171 N. Y. 61, a contractor was ordered by the city's engineer to take up

and relay pavement, alleged to have been improperly constructed under the specifications. The contractor objected vigorously, but complied with the order, at substantial expense to himself. The complaint alleged these facts, among other things, and further, that the action of the engineer was unlawful and in breach of the contract. The complaint was dismissed at the close of the claimant's case. The Court of Appeals reversed the judgment and ordered a new trial, saying in its opinion: "It is very clear that the plaintiff could have stopped work as ordered by the engineer of construction and stood upon his contention that the work had been properly done, brought his action to recover for labor and materials performed and furnished under the contract and claimed his prospective profits. (*Smith* v. *Wetmore,* 167 N. Y. 234; *Roehm* v. *Horst,* 178 U. S. 1.)

" The important question is whether a second remedy is open to the contractor, such as is invoked in this case. The plaintiff did not choose to put himself in the attitude of refusing to obey the directions of the commissioners, thereby assuming the position of a defaulter under a contract with the city, but preferred to perform it as best he could, accepting under the final certificate such amount as the city admitted to be due him, subject to reservation of his rights under oral protests and the written release under seal, to which reference has already been made. * * * *

" It is insisted on behalf of the city that the plaintiff, by obeying the orders of the engineer of construction, requiring him to take up and relay the alleged improper work, without making any claim for extra compensation at the time the changes were ordered or made or without making a new contract, has waived any claim, if he was entitled to any, to extra compensation.

State of New York, Court of Claims, May, 1918. [Vol. 103.

'' This proposition assumes, erroneously, that the plaintiff is seeking to recover extra compensation under the contract. This action is to recover damages for breach of the contract. It is true that the plaintiff made no claim for extra compensation as he contemplated the best performance of the contract within his power and then an action for damages. The facts already stated do not sustain the contention that the plaintiff has waived the claim that he now makes.

''As we have seen, by oral protests and by the written release, the plaintiff carefully reserved his rights.''

In the *Gearty* case, the question involved was one of waiver, but the reasoning and the conclusion are applicable equally here. The court held that the action was for breach of contract, and that there was no waiver, but that the plaintiff was entitled to elect his remedy, and had done so.

It is clear from the phraseology of the claim, and the attitude and evidence of the claimant at the trial, that this claim, likewise, is for breach of the original contract, and is identical in nature with that in *Gearty* v. *City of New York*. If it is for breach of the original contract, then, of course, no supplemental contract is necessary, because the original contract, executed by the commission, is the basis of the claim.

The *Gearty* case is the leading case in our state, on this subject. It grew out of the determination of the courts to obviate the palpable injustice of requiring a contractor to decide, at his peril, every close and debatable contention over the construction of his contract, or the plans and specifications accompanying it. Were it not for this attitude of the courts, the contractor, in every instance, would be obliged to submit to the construction of the contract insisted upon by the engineer, to his loss, and, by compliance, waive all his rights in

that connection, or, otherwise, refuse compliance, and face liability as a defaulter under the contract, if his own construction of its requirements finally proved erroneous. The principle enunciated in the *Gearty* case has been modified and more clearly stated and applied in subsequent decisions, particularly in the case of *Borough Const. Co.* v. *City of New York,* 200 N. Y. 149, in which the court delineated the rule, as we may regard it to be established, as follows: " These considerations seem to suggest the general rule that where the municipal representative, without collusion and against the contractor's opposition, requires the latter to do something as covered by his contract, and the question whether the thing required is embraced within the contract is fairly debatable and its determination surrounded by doubt, the contractor may comply with the demand under protest and subsequently recover damages even if it turns out that he was right and that the thing was not covered by his contract, and, on the other hand, if the thing required is clearly beyond the limits of the contract, the contractor may not even under protest do it and subsequently recover damages. While this rule is only a general one and may not be determinative of every conceivable case, it seems to furnish a test by which to decide phases of the question which will ordinarily present themselves, and it may both be illustrated by and applied to the facts established in this case."

The principle which we have in mind has been applied in many other cases, to a few of which reference may be made. *Dwyer* v. *City of New York,* 77 App. Div. 224, 230; *Beckwith* v. *City of New York,* 148 id. 658; *Ryan* v. *City of New York,* 159 id. 105.

We conclude that the items of the claim, in reference to the stone, in the sum of $69,540.20, fall within the limitations of the principle, as defined in the case of

*Borough Const. Co.* v. *City of New York, supra.* The orders and directions as to the stone were not a proper application of the specifications, and were not imposed on the claimant properly, by the provisions of his contract. How " run of the crusher " stone should be .applied, under these specifications, and under the evidence in this case, was fairly debatable, and surrounded by doubt, although we find the claimant's construction of the contract to have ˙been correct. He protested vigorously against the directions of the state, and complied reluctantly. The state, by the orders of its engineer, at the behest of the highway commission, broke the original contract with the claimant, and this action is for damages for that breach. He did not waive his rights in the premises, by compliance with the demands made upon him, and is entitled to recover in this court his damages, which, under the authorities to which we have referred, are measured by the value of the additional work and material. It was fixed by the contract at $1.70 per cubic yard of stone. He is entitled to recover therefor the sum of $69,540.20, without interest, the amount of this item, in quantity and value, being unliquidated and undetermined, until the trial.

The foregoing discussion demonstrates that the various other items of this claim, aggregating the sum of $8,720.72, do not constitute any basis for recovery. If we consider them as extra work or materials for which recovery is sought as such then it is barred by the provision of the Highway Law, to which we have referred, because none of these items was provided for, or agreed upon, in the original, or in any supplemental, contract executed by the commission. If the claimant's theory as to these items is the same as to the stone item, for which we have decreed recovery, and we believe it to be, then he has waived his rights, in

this connection, by compliance with the orders and directions, if any were given to him in that respect. In other words, these items do not come within the principle defined in the *Borough Construction Company Case, supra*. It does not appear that they were performed, or furnished, over the claimant's opposition, and after his protest. On the contrary, it does not appear that they were not performed or furnished, willingly, or by agreement between the claimant and the state. Certainly, it is not evident that they were performed or furnished under any debatable or doubtful provisions of the contract, concerning which the parties differed. For these items, it is obvious there can be no recovery.

The foregoing discussion relates to the legal principles involved in this claim. In morals and common honesty, there can be no doubt whatever of the absolute right of the claimant to recovery for every item of his claim. The state was in the position, at the trial, of admitting this and of apologizing for the " wrong " which it was seeking to impose on the claimant. It was frankly admitted that the claimant had performed or furnished all of the items, for which he claims, pursuant to the demands of the state, and that his claim was reasonable and honest in quantity and amount. It seems, however, that between the time when the demands were made upon and complied with by the claimant, and the time for payment, there was a change in the personnel of the highway commission, and the new commissioner refused to assume responsibility for what had preceded his régime, to the extent of executing a supplemental agreement, for any of the items of this claim, or to take any of the necessary steps to compensate the claimant for the work and materials, of which the state unquestionably has had the benefit. The claimant was told that he would " have to go to

the Court of Claims.'' Scant comfort in that admonition, if the contention advanced by the state on the arrival of the claimant in this forum were to prevail. Here he was met at the threshold by the state's representative, vigorously contesting his claim, on the statutory ground to which we have referred. Fortunately, the law permits recovery by the claimant for the major portion of this just claim, and somewhere in the mechanism of the state there ought to be power and function to compensate him for the other items, for which we find it impossible, because of this statutory provision, of which the state unblushingly takes advantage.

ACKERSON, J., concurs.

Judgment accordingly.